UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 04-10299

UNITED STATES OF AMERICA

V.

ROBERT RUSCIO

DEFENDANT'S SENTENCING MEMORANDUM

The defendant submits this memorandum, 26 letters of recommendation and an Aid To Disposition by Dr. Robert H. Joss, to assist the Court in fashioning a sentence sufficient, but not greater than necessary, to achieve the purposes of 18 U.S.C. sec. 3553 in light of United States v. Booker, 125 S. Ct. 738 (2005).

Because of the circumstances of this case, and his own background, the defendant requests that the Court impose the following nonguideline sentence: fourteen days imprisonment with credit for the fourteen days that he spent in custody after his arrest, followed by three years of supervised release. This sentence is appropriate because the evidence indicates that Ruscio is not the average drug dealer or user. He lived an exemplary life for fifty years before briefly turning to crime. While he was involved with drugs, his pattern of using and dealing was atypical. Finally, after his arrest,

1

he was able to immediately get back on the right track. This history indicates that the Court should not look solely to the guidelines for the appropriate sentence.

HISTORY AND CHARACTERISTICS OF DEFENDANT

Ruscio grew up in a loving, stable family. At the time of his drug involvement he was not addicted to drugs, nor was he desperate for money. So the usual explanations for drug dealing; a poor upbringing, greed, or the need to feed a habit are not present in this case. To explain Ruscio's involvement with drugs, it is necessary to dig into his psychological make-up and to examine the circumstances of his life at the time of the involvement.

The circumstances suggest that a combination of factors contributed to his decision to become involved with drugs. To begin with, his psychological profile indicates that he found it difficult to refuse others' requests to obtain cocaine. See Dr. Joss' report, P. 6. He was able to overcome this weakness for the first 50 years of his life, but then he was confronted with physical, emotional and business problems that seem to have weakened his resolve, and the drugs followed.

The primary emotional problem was the deaths of his parents. In the average case, the death of a parent would not be an explanation, never mind

an excuse, for drug use or dealing. But in this case, the Court should consider Ruscio's parents' deaths because they affected him more than what would be expected. Ruscio was unusually close to his father, having worked with him for thirty years. The letters submitted by the defendant provide an insight into their relationship. Of the 26 letters, about half mention the father, which is significant considering that the father has been dead for nine years. According to those who know him, when the father died in 1997, the defendant lost his role model and moral compass. The defendant's brother, Frank, also believes that the mother's death in 2000 contributed to the defendant's moral lapse. In any event, it is safe to say that it was not a coincidence that the defendant's involvement with drugs began after his parents' deaths. For purposes of sentencing, the parents' deaths are obviously nonrecurring events. Most importantly, the defendant has come to grips with the loss, so it is unlikely that his parents' deaths would be a cause of future criminal behavior by him.

Another factor contributing to the drugs was the defendant's health. By the early 2000's, Ruscio was suffering physically because of bad hips. Eleven of the letters mention these physical problems. Before the hips were replaced in October 2003 and April 2004, he was in constant pain.

3

According to Dr. Joss this pain led to depression and drug use. These factors undoubtedly contributed to his decision to distribute drugs.

The physical problems also prevented Ruscio from working, which caused his business to fail. But, since his last surgery in April 2004, Ruscio's physical condition has improved markedly. He has been able to go back to work at his carburetor shop where he now specializes in antique cars and boats, and the business has started to pick up. Incarceration would wipe out these gains. If he were incarcerated, at his age, it is doubtful that after his eventual release, he would be able to start up the business again and be a contributing member of society.

Other factors also weigh in favor of a nonguideline sentence. For example, since his release from custody on May 14, 2004, he has had a perfect record of complying with the terms of his release. This suggests that he has changed his attitude and that drugs did not become a way of life for him. It also bodes well for him in the future.

Furthermore, on May 21, 2004, he made a complete and truthful proffer to the prosecution. Subsequent to the proffer, he contacted authorities several times with additional relevant information. It should also be noted that Ruscio has never lied about his involvement. He volunteered to speak to the prosecution as soon as he was able. This immediate and

complete cooperation provides an insight into his character and is further proof of a turn around in his attitude concerning drugs.

Since his arrest, there has been an outpouring of support for Ruscio. Twenty-six people have taken the time to write letters for him. Family and friends have also shown their support by attending his court appearances. This support is a testament to his good character and is an indication that his criminal behavior was aberrant.

One theme reverberates throughout the letters: Ruscio's commitment to his family. Admittedly, this commitment did not prevent the drug involvement in the first place, but nine letter writers felt that the defendant has been punished by the knowledge that he had let his family down.

NATURE AND CIRCUMSTANCES OF OFFENSE

The true nature of this offense also weighs in favor of a nonguideline sentence. The prosecution has been reasonable in agreeing to the 400-500 grams, however, this quantity alone is not an accurate measure of culpability. Ruscio concedes that he resold some of this cocaine, but some he used himself, and some he shared with friends while they watched sports on TV. In addition, the quantity built up over time. Ruscio bought in quantities not exceeding 7 grams. Agents did not confiscate any paraphernalia that indicated Ruscio was repackaging the cocaine, nor did

they seize any money. Any profit that he made went into buying more cocaine. This evidence indicates that Ruscio was not the average dealer. This supports an argument that a nonguideline sentence is appropriate because his culpability is less than if the 400 to 500 grams were the result of one large deal.

## CONCLUSION

The Court should and must punish the defendant, but a guideline sentence would serve no end but punishment. The nonguideline sentence proposed by the defendant would provide just punishment and comply with the other purposes of 18 U.S.C. sec. 3553. In summary, a nonguideline sentence is appropriate because the factors that led to the drug involvement are unlikely to recur. In addition, because of the defendant's age, lack of prior record, tremendous remorse, and according to Dr. Joss, his amenability to supervision, the Court can feel confident that he will not go back to drugs.

Finally, the defendant has stayed clean since May 2004. He does not believe that he has a cocaine addiction but recognizes that this pending case may have played a part in his capacity to stay clean, so if the Court orders drug treatment the defendant will readily comply.

For all of the above reasons, the defendant requests that the Court adopt his sentencing proposal.

For the defendant,

/s/EDWARD L.HAYDEN
EDWARD L. HAYDEN
7 FRANKLIN STREET
LYNN MA 01902
(781) 599-1190
BBO #226430